JAMES B. THORNTON *versus* LORING FOSS.

If a person can acquire any title to flats, covered by water at ordinary flood tides, but rising above the water at low tides, by cutting "thatch grass," growing thereon, each year for forty successive years, such title will not extend beyond the line of the actual occupation by cutting the grass.

But if the party had title to such "thatch islands," or elevations of the flats, and in consequence of the colonial ordinance of 1641, c. 63, that title was extended to low water mark, it would extend only to flats lying between the thatch islands and low water mark, and not to flats lying to the right or to the left of the land not covered by water at ordinary low tides.

TRESPASS *quare clausum* for taking and carrying away five loads of "marsh mud," from the close of the plaintiff in Scarborough, described as "called and known as the Thatch Islands, in Scarborough or Blackpoint River, and near the mouth of Jonas' creek, and the same purchased by said plaintiff of one Hunking Leavitt."

One of the witnesses called by the plaintiff was his grantor, Hunking Leavitt, who testified, that he had no other title to the premises, than by possession, but that he had, for twenty-eight years prior to his conveyance to the plaintiff, cut the "*Thatch Islands*, every year, as his own, without any interruption."

The first witness called by the plaintiff testified, that "at the highest of the tides, when the tides run very low, about a quarter of an acre of the thatch beds are not covered with water. At high tides and at middling tides they are covered at high water."

At the trial before TENNEY J. the parties respectively introduced their testimony, and deeds ; and then, by consent of parties, the case was taken from the jury and submitted to the decision of the Court, who were to be at liberty to make such inferences as a jury might make from the evidence, and enter such judgment, upon nonsuit or default, as might be necessary to carry their decision into effect.

The material facts appear in the opinion of the Court.

*A. Haines,* for the plaintiff, said that the plaintiff had a perfect title to the premises, where the manure was taken, by

a recorded deed and possession under it, for more than twenty years; and his grantor had occupied for twenty-eight years. He argued in support these legal positions.

1. The effect of the colonial ordinance of 1641, c. 63, § 3, was to extend the grant to low water mark. 14 Johns. R. 255; 1 Wend. 237; 6 Cowan, 518; 22 Maine R. 356; 20 Maine R. 357; 22 Pick. 85; 1 Metc. R. 95.

2. The pleadings, being the general issue only and joinder, do not permit the defendant to deny our rights to the Thatch Islands. 22 Maine R. 85.

3. If the owner of the marsh owned the premises in controversy, originally, as riparian proprietor, the plaintiff has acquired a title thereto by disseizin. 4 Mason, 326.

4. The owner of Thatch Islands is entitled to riparian rights equally with the proprietor of the main land.

*Howard & Shepley* argued for the defendant in support of these propositions.

1. The plaintiff had no title to the *locus in quo,* and therefore cannot maintain this action. His deed does not cover it.

The *locus in quo* was a part of the shore, between high and low water mark. The colonial ordinance of 1641, (Ancient charters, 148) is a part of the common law of this State. 8 Greenl. 85; 9 Greenl. 42; 6 Mass. R. 435; Just. Inst. L. 2, T. 1, § 3, 5, 20; Hale, *Jure Maris,* c. 4; Hargrave & Butler's notes to Coke Lit. note 205; 2 Black. Com. 262; 3 Kent, 428; 6 Cowen, 518, note 536. No right could be acquired by possession.

2. But if a possessory title was acquired by the plaintiff to the flats, it was only to the *thatch beds,* where the thatch grass grew and was cut. The mud was taken more than four rods from where the grass was cut. The title, if any, was limited by the possession, and no riparian rights were acquired. 10 Peters, 662; 16 Peters, 55.

3. If riparian rights did attach to these thatch beds, they would extend only in front, to low water mark; and not up or down stream, and so would not include the place where the mud was taken

The opinion of the Court was delivered orally at a subsequent day in the same term and afterwards reduced to writing by

SHEPLEY J. — The close, on which the trespass is alleged to have been committed, is described in the writ as " the Thatch Islands in Scarborough or Black Point River and near the mouth of Jonas' creek, and the same purchased by the said plaintiff of Hunking Leavitt." In the conveyance from Leavitt to the plaintiff it is described as " the Thatch Islands situate on the western side of Black Point river in Scarborough aforesaid, opposite Patterson's marsh at the mouth of Jonas' creek, containing about six acres." Whatever title Leavitt had, was acquired by possession. That possession consisted only in cutting annually for many years the coarse grass commonly called thatch, and found upon the islands as they are called. The plaintiff has continued to occupy them in the same manner. These islands are situated between the marsh land and low water mark on the southwesterly side of the river. They are covered by the water at every ordinary flood tide. The testimony shows, that the defendant dug and carried away several loads of mud manure composed of marsh mud, muscles and raskweed, from the flats or shore on the southwesterly side of the river, and from four to ten rods northerly, and distant from these Thatch Islands. This was the trespass alleged. The testimony shows, that the distance from the marsh land across the flats to low water mark, was less than one hundred rods.

If the title of the owner of the marsh land extended by virtue of the colonial ordinance of 1641, to low water mark, the Thatch Islands were a part of the estate owned by the person who had a legal title to the Patterson marsh, unless he had been deprived of his title to the islands by an exclusive and adverse possession. Admitting the title of the plaintiff to them to have become perfect by such a possession for more than twenty years, that title would not thereby be extended beyond the line of the actual occupation by cutting the grass; and that line would not include the place, from which the mud

manure was taken by the defendant. It is contended, that the plaintiff's title to the islands was extended over the adjoining flats by virtue of the ordinance. The effect of that is to declare, that the proprietors of the lands adjoining tide waters shall become the owners of the flats or shore to low water mark, where the tide does not ebb and flow above one hundred rods. The land adjoining must be regarded as the land, to which the tide flows, and from which it ebbs; and not land, if such it may be called, elevated so far above the common level of the flats, that it is not entirely covered by the neap tides. If the ordinance should be considered as applicable to a small island elevated above the common level of the shore and as extending the title of the owner to low water mark, it might happen, that flats would be owned by virtue of it by the owner of the main land and of the island to a greater distance than one hundred rods from high water mark; and yet the ordinance declares, that it shall not be extended more than one hundred rods, where the tide ebbs and flows further than that distance.

If the plaintiff's title to the Thatch Islands could be extended by the ordinance to low water mark, he would not thereby acquire any title to the flats, from which the mud manure was taken by the defendant. For the ordinance would extend his title only over the flats lying between them and low water mark. It would not extend the title to the islands up or down the river at all over the adjoining flats. To allow the ordinance to have the effect to do this would be to deprive the owners of lands adjoining the river above and below the islands of all benefit to be derived from it. In whatever aspect the plaintiff's title may be viewed, he does not appear to have become the owner, or to have been in possession of the flats, where the acts complained of as a trespass were done.

*Plaintiff nonsuit.*